IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JAMES MANNING, et al.,

    Plaintiffs,

v.                                              Civil Action No. 3:23-cv-586

DRURY HOTELS COMPANY, LLC,
d/b/a DRURY PLAZA HOTEL RICHMOND,
et al.,

    Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on OTIS ELEVATOR COMPANY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT (ECF No. 15) ("the Motion"), DEFENDANT OTIS ELEVATOR COMPANY'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS (ECF No. 16), PLAINTIFF'S RESPONSE TO OTIS ELEVATOR COMPANY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT (ECF No. 22), Plaintiffs' BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO OTIS ELEVATOR COMPANY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT (ECF No. 23),[1] and DEFENDANT OTIS ELEVATOR COMPANY'S MEMORANDUM REPLYING TO PLAINTIFF'S RESPONSE

---

[1] The plaintiffs filed a response and a separate memorandum in support of the response, as one would file when filing a motion and supporting memorandum under Local Rule 7. This was procedurally in error, but the memoranda do not appear to make separate arguments. Accordingly, the Court construes them as one memorandum.

TO, AND IN FURTHER SUPPORT OF, OTIS'S MOTION TO DISMISS (ECF No. 25). Having reviewed the papers and heard oral argument, and for the reasons set forth on the record on April 2, 2024, and for those reasons set forth below, the Motion will be granted.

## BACKGROUND

### I. Procedural History

On June 23, 2023, Plaintiffs James Manning, Sherry Lomax, Robert Watson, and Debra Manning filed individual actions in the Circuit Court of Virginia for Henrico County against Defendants Drury Hotels Company, LLC and Drury Development Corporation (individually and collectively "Drury"), doing business as Drury Plaza Hotel Richmond, as well as Defendant Otis Elevator Company ("Otis"). Each complaint alleged negligent failure to maintain an elevator in the Dury Plaza Hotel in western Henrico County. ECF No. 1-2; Case No. 3:23-cv-587, ECF No. 1-2; Case No. 3:23-cv-588, ECF No. 1-2; Case No. 3:23-cv-589, ECF No. 1-2.

After Drury filed a NOTICE OF REMOVAL (ECF No. 1) in each case on September 14, 2023, and after conferring with the parties at the initial pretrial conference on March 30, 2024, the Court consolidated the cases and ordered that all future pleadings to be filed under the style of this case, Civil Action No. 3:23-cv-586. Order of March 22, 2024 (ECF No. 31). The Motion seeks dismissal of all cases as to Otis.

2

## II. Factual Background

The facts alleged in the COMPLAINT (ECF No. 1-2) and taken in the light most favorable to the plaintiffs, are simple.

On or about August 8, 2021, all four plaintiffs were passengers in an elevator at the Drury Plaza Hotel Richmond. ECF No. 1-2 ¶ 3. The plaintiffs were registered guests of the hotel. Id. While the plaintiffs were on the elevator, it allegedly malfunctioned and fell approximately two floors before stopping abruptly, injuring the plaintiffs. Id. ¶¶ 4, 9. Otis had a contract with Drury to maintain the elevator. Id. ¶ 2; ANSWER OF OTIS ELEVATOR COMPANY (ECF No. 19) ¶ 2.

The plaintiffs have pled that:

> [I]t was the Duty [sic] of Otis to properly maintain the aforementioned elevator free from defects. It was also the duty of Otis to warn invitees as well as Drury of any defective condition associated with the elevator.

ECF No. 1-2 ¶ 7. "Notwithstanding said duties," Plaintiffs continued, "Otis carelessly and negligently maintained the elevator so that it malfunctioned causing it to suddenly fall approximately two floors before stopping abruptly," injuring the plaintiffs. Id. ¶ 8.

## III. Parties' Positions

### a. *Otis*

The crux of the Motion is that Otis did not owe a duty in tort to the plaintiffs. Noting that there are only two potential sources of a legal duty from which a cause of action could arise: tort and contract,[2] Otis points out that the maintenance contract was between Otis and Drury, and that none of the plaintiffs were a party to it. Id. at 2. So, the only duty Otis could owe the plaintiffs is in tort, i.e., negligence.

Citing Tingler v. Graystone Homes, 834 S.E.2d 244 (Va. 2019), Otis argues that to establish a cognizable claim for negligence, the duty alleged to have been breached must be a statutory or common law duty, not one arising out of contract. Id. at 6. Tingler, says Otis, stands for the proposition that a duty of care in tort cannot arise from a contract. ECF No. 16 at 7 ("Generally, the duty must arise by operation of law and not by mere agreement of the parties. Stated differently, a 'tort' is a legal wrong committed upon the person or property independent of contract.") (quoting Tingler, 834 S.E.2d at 254) (cleaned up).

---

[2] See ECF No. 16 at 5-6.

4

Otis also relies on a recent Eastern District of Virginia case that it says is on all fours with this one. In <u>Holderfield v. ThyssenKrupp Elevator Corp.</u>, No. 1:20-cv-01599, 2022 WL 980638 (E.D. Va. March 30, 2022), the court dismissed a complaint alleging that the elevator company negligently failed to maintain an elevator in a government building where the elevator company had a contract to maintain the elevators. ECF No. 16 at 7. According to Otis, <u>Holderfield</u> held that "[w]hile Virginia tort law has recognized actionable claims with respect to elevator injuries, these decisions have only extended to the *owners and operators* of elevators, and not in the context of a defendant tasked solely, in a contractual capacity, with elevator maintenance and repair." <u>Id.</u> at 8 (quoting 2022 WL 980638, at *10).

Therefore, says Otis, the only duty Otis owed the plaintiffs was the universal common law duty not to harm them actively or affirmatively. <u>Id.</u> Otis characterizes this as a duty not to engage in "misfeasance," versus a duty not to harm someone through an omission, which it characterizes as "nonfeasance." <u>Id.</u> Citing <u>Tingler</u> again, Otis contends that there is no common law duty in tort to "fail[] to do something that would have prevented harm . . . ." <u>Id.</u> at 9 (quoting 834 S.E.2d at 256). By way of another example, Otis cites a case in

5

which the court held that there was no duty of one defendant, which had contracted to perform maintenance on the other defendant's property, to prevent an attack and robbery due to a door lock left in disrepair. Id. at 10 (citing Holles v. Sunrise Terrace, Inc., 509 S.E.2d 494, 498 (Va. 1999)).

### b. Plaintiffs

In their response MEMORANDUM, the plaintiffs repeat their conclusory statement from the COMPLAINT that Otis both "carelessly and negligently maintained the elevator . . ." and that Otis had a duty to maintain the elevator free from defects. ECF No. 22 ¶ 2. In addition, the plaintiffs respond to Otis's contention that Otis owed the plaintiffs no common law duty of care, by arguing that a Virginia court has ruled against Otis before on this very issue, attaching a copy of an order from Markert v. Richmond Int'l Raceway, Inc., No. CL062737 (Richmond Circuit Court 2008). ECF No. 22 ¶ 3; ECF No. 22 at 3. However, the order they attached was one merely denying Otis's demurrer in that case,[3] and it provided no context whatsoever for the nature of the claim or demurrer itself.

---

[3] Moreover, the Order was marked up and in handwriting different from that of the presiding judge, without a separate date or initial, confusingly explaining that the demurrer was denied in part and granted in part. See ECF No. 22 at 3.

6

In a separately filed brief in support of the "RESPONSE" (see n.1, supra), the plaintiffs make some additional legal arguments. First, they characterize Otis's argument as saying that Otis's contract with Drury "insulate[d] and immunize[d] it from any and all liability in tort for its negligent and/or careless conduct." ECF No. 23 at 2. Citing Parker v. Elco Elevator Co., 462 S.E.2d 98 (Va. 1995), the plaintiffs argue that there, the court held that the plaintiff "was entitled to present evidence at trial on a theory of negligence against the elevator company."

Next, the plaintiffs respond to Otis's argument that the COMPLAINT does not allege misfeasance, but nonfeasance, by pointing to Paragraph 8 of the COMPLAINT which "alleges that the Defendant acted negligently and carelessly causing the elevator to malfunction." That, say the plaintiffs, is tantamount to a claim of affirmative misfeasance. Id.

Finally, the plaintiffs address Otis's argument that it did not owe the plaintiffs a common law duty, relying on Boland v. Rivanna Partners, 69 Va. Cir. 308 (2005). ECF No. 23 at 2-3. The plaintiffs argue that, in Boland, as here, the plaintiff sued one defendant who had a contract to safely maintain the parking lots of the other defendant. The independent contractor defendant there argued that the only duty it had arose from that

7

contract. Id. The plaintiffs here argue that the court in Boland rejected that argument, holding that the users of the parking lot were *reasonably foreseeable* and thus, the independent contractor owed them a duty to use reasonable care in maintaining the lot. Id. at 3. According to the plaintiffs, here, as in Boland, they, guests of the hotel, would be foreseeably affected by the elevator and therefore, Otis owed them a common law duty of care. Id.

### c. Otis's Reply

In reply, Otis made three main arguments: (1) that the plaintiffs misunderstood and mischaracterized Otis's arguments on brief; (2) that Otis is alleged only to have engaged in nonfeasance, which is not a breach of the generic duty of care; and (3) that none of the plaintiffs' case analogies held water. ECF No. 25.

## DISCUSSION

### I. Legal Standard

"A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint, considered with the assumption that the facts alleged are true." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (cleaned up). The Court "must accept the factual allegations of the complaint as true and construe

them in the light most favorable to the nonmoving party." Rockville Cars, LLC v. City of Rockville, 891 F.3d 141, 145 (4th Cir. 2018). So, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). But, "[a]lthough for the purposes of [a] motion to dismiss [the Court] must take all the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

A district court sitting in Virginia applies Virginia choice of law to decide tort actions. Milton v. IIT Res. Inst., 138 F.3d 519, 521 (4th Cir. 1998) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941)). Applying Virginia choice of law, "Virginia applies the *lex loci delicti*, the law of the place of the wrong, to tort actions like this one." Id. The alleged tort happened in Virginia. Thus, whether a duty in tort existed is a question of Virginia law.

"'Negligence,' [the Supreme Court of Virginia has] long said, 'is not actionable unless there is a legal duty, a violation of the duty, and consequent damage." Burns v. Gagnon,

9

727 S.E.2d 634, 641 (Va. 2012) (quoting Marshall v. Winston, 389 S.E.2d 902, 904 (Va. 1990)). Therefore, "[i]n Virginia, '[t]he question of liability for negligence cannot arise at all until it is established that the man who has been negligent owed some duty to the person who seeks to make him liable for his negligence.'" Tingler, 834 S.E.2d at 253 (quoting Dudley v. Offender Aid & Restoration of Richmond, Inc., 401 S.E.2d 878 (Va. 1991)).

In Tingler, the Supreme Court of Virginia set forth a detailed and thorough analysis of the "choice of duty" rule in Virginia, governing whether a duty--the breach of which gives rise to a cause of action--arises from contract or from common law. Writing for a unanimous court, Justice Kelsey held to the well-established axiom that "there is no such thing as negligence in the abstract, or in general . . . ." Tingler, 834 S.E.2d at 253 (quoting Kent v. Miller, 189 S.E. 332 (Va. 1937)). Rather, the negligence must arise from the breach of a specific duty. And:

> No matter the alleged harm, tort liability cannot be imposed upon a contracting party for failing to do a contractual task when no common-law tort duty would have required him to do it anyway--and thus, as the maxim restates, "in order to recover in tort, the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract."

10

Id. at 255 (quoting MCR Fed., LLC v. JB&A, Inc., 808 S.E.2d 186, 193 (Va. 2017)). Therefore, although the existence of a contract between two parties does not "shield" one party from tort liability, tort liability cannot arise solely by virtue of a failure to perform that contract. See id. ("We have also emphasized that the mere fact that a plaintiff has sought recovery for pain and suffering does not, standing alone, convert a contract claim into an action in tort.") (cleaned up).

Accordingly, to survive a motion to dismiss as to a claim for negligence, a plaintiff must plausibly plead that the defendant breached a common law duty of care,[4] separate from the existence of a contract to maintain premises for another defendant. In assessing the nature of that duty, it is necessary to keep in mind that, "[t]hough subject to various exceptions, the traditional view recognizes that '[t]here is no tort liability for nonfeasance, i.e., for failing to do what one has promised to do in the absence of a duty to act apart from the promise made.'" Id. at 256 (quoting William L. Prosser & W. Page Keeton, Prosser and Keeton on the Law of Torts § 92, at 657 (Dan B. Dobbs et al. eds., 5th ed. 1984)). This is true whether the harm done to the plaintiffs was foreseeable or not. "[N]o tort

---

[4] The breach of a duty set by statute was not at issue in Tingler.

11

duty arises simply because [one] fails to make . . . contractually required repairs irrespective of the foreseeability of . . . harm to [others]." Id. at 257.

In similar contexts, the Supreme Court of Virginia has reached the same result. In Steward ex rel. Steward v. Holland Fam. Props., LLC, 726 S.E.2d 251, 254-255 (Va. 2012), where a tenant suffered an injury caused by the condition of the premises, the Supreme Court of Virginia held that a lease could not impute an affirmative common law duty on a landlord to maintain leased property free of dangerous defects. And in Holderfield, an Eastern District of Virginia decision, applying Virginia law, held that an elevator company did not transform into a common carrier (which, if so, would impute a higher standard of care) by virtue of a maintenance contract. 2022 WL 980638, at *10. In fact, the court there held that it could not "find as a matter of law that [the elevator maintenance company] owed *any common law duty* to [the] plaintiff. Rather, the source of [the company's] duty [arose] entirely from the *private* agreement to provide elevator repair and maintenance services to [the building owners]." Id. (first emphasis added).

In short, a duty in tort must arise independently of a contract, especially where a breach of that duty is alleged by parties not privy to that contract. And no common law duty to

12

prevent harm exists absent a special relationship or other exception to the general rule.

## II. Analysis

The COMPLAINT makes the following allegations: Drury operates the hotel; Drury contracted with Otis to maintain the elevators in the hotel; Otis had a duty to properly maintain the elevators; the plaintiffs were registered guests at the hotel on or about August 8, 2021, when the elevator fell and injured the plaintiffs while they were on it; Otis negligently maintained the elevator causing it to malfunction; Otis was aware of the defect that caused the fall, either actively or constructively; and, Otis did not warn Drury or the plaintiffs. ECF No. 1-2 ¶¶ 1-4, 7-9.

However, the mere statement that a duty to maintain existed, and that the maintenance was negligent, are the types of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ," Ashcroft, 556 U.S. at 678, that the heightened pleading standard seeks to weed out.

The analysis therefore turns to whether, taking the well-pled factual allegations as true, the COMPLAINT pleads a legally sufficient negligence claim (for failure to maintain or failure to warn). It does not.

13

The contract between Otis and Drury cannot give rise to a negligence action for the plaintiffs. Tingler is controlling authority in this case. It is well-settled there (and in other Virginia cases, relied on in Tingler and elsewhere) that the source of a legal duty in tort cannot arise from a contract. Here, Otis contracted to maintain the elevator for *Drury*. This contractual duty was for the benefit of Drury, even though the plaintiffs were foreseeable victims of a breach of that duty. See Tingler, 834 S.E.2d at 254 n.8. Because Otis owed the plaintiffs no duty in contract, the plaintiffs must allege that a common law duty existed to state a legally sufficient negligence claim. They have not made such an allegation.

Absent the contract, the relationship between Otis and the plaintiffs is no different than the relationship between two passers-by on the street. Tingler instructs the well-settled rule that, in general, there is no higher duty owed between such parties than a general duty to act with reasonable care. That is, a duty not to affirmatively, unreasonably act; i.e., a duty not to engage in misfeasance. See id. at 256 ("There is no tort liability for nonfeasance, i.e., for failing to do what one has promised to do in the absence of a duty to act apart from the promise made."). This does not change by virtue of the contract between Otis and Drury.

14

Holderfield is persuasive here as well. As in Tingler, Holderfield held that "[actionable tort claims] have only extended to the owners and operators of elevators, and not in the context of a defendant tasked solely, in a contractual capacity, with elevator maintenance and repair." 2022 WL 980638, at *10. Furthermore, the existence of the contract in Holderfield did not transform the elevator company's role into something greater, like a common carrier, or create a special relationship, elevating the duty of care to something higher than a general duty of reasonableness. See id. Thus, Otis did not owe the plaintiffs a common law duty by virtue of being a common carrier, or by virtue of some other special relationship, either.

The COMPLAINT does not allege the existence of a common law duty owed by Otis to the plaintiffs to keep the elevator free from defects. Nor does it allege a common law duty to warn.

At the hearing on the Motion, counsel for plaintiffs explained that he had not amended the COMPLAINT, to comply with the "plausibility" standard set forth by the Supreme Court in Iqbal and Twombly, because he was still awaiting discovery containing the "necessarily particular facts" with which he would amend the COMPLAINT. However, counsel for Otis made it known that Otis had turned over the relevant documents, weeks

15

prior, in its initial disclosures. Counsel for the plaintiffs did not dispute that representation. Therefore, plaintiffs had the opportunity to seek leave to modify the COMPLAINT before the hearing on this matter, which they failed to do. For that reason, the Motion will be granted without leave to amend.

## CONCLUSION

For the foregoing reasons, OTIS ELEVATOR COMPANY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT (ECF No. 15) will be granted without leave to amend.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: April 18, 2024